UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID BURNETT,                        )
                                      )
           Plaintiff,                 )
                                      )
   vs.                                )     04 C 3835
                                      )
LFW, INC. f/n/a THE HABITAT COMPANY,  )
                                      )
           Defendant.                 )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant LFW, Inc., for summary judgment of both counts of Plaintiff David Burnett's complaint. For the reasons set forth below, the motion is granted.

## BACKGROUND

LFW manages property facilities around the Chicago area. Burnett was employed at one of their properties from 1986 until January 2004. He held different positions at various times over the course of his employment, but all involved cleaning or preparing apartments for occupancy by ensuring that equipment, furnishings, and the like were clean and in good working order for new tenants. For the last 14 years of his employment, Burnett was supervised directly or indirectly by Sergio Polo.

In October 2003, Burnett told Polo that he had a weak bladder that may have been caused by nerves and that he would soon see a doctor about the problem. In December, he underwent a blood test that showed he had a high prostate-specific antigen ("PSA") level as well as high cholesterol. At the end of January, he had a biopsy of his prostate gland. He requested and received time off to go to this appointment and returned to work the following day, January 28. That day, he submitted a vacation request for the second week of February, which was approved. The following day, he submitted another vacation request that extended the January 28 request. When Polo saw the second request, he asked a coworker to tell Burnett that he wanted to see him. The colleague relayed the message at approximately 10:00 a.m. Burnett did not go to meet Polo; instead he told the coworker to tell Polo that he was sick and wanted to go home. About 15 minutes later, he was again told to see Polo, but he simply repeated that he was sick and continued to prepare to leave. He was told that if he left, he would be considered insubordinate.

Burnett then went to clock out and leave work. Polo met him at the time clock. Burnett again stated that he was sick. Polo informed him that he was being insubordinate and that he would be suspended with pay if he left. In spite of this statement, Burnett punched out, changed his clothes, turned in his keys and key card, and left the building. He did not contact his employer for the rest of that day, nor did

he go to work the next day, a Friday. The following Monday, Polo sent Burnett a letter terminating his employment effective the prior Friday. The letter stated that the reason for the termination was Burnett's insubordination.

Eight days later, on February 10, Burnett was diagnosed with prostate cancer. On the 27th, he filed a charge with the EEOC contending that he had been fired because of a disability in violation of the Americans with Disabilities Act ("ADA"). After the EEOC issued its right-to-sue notice, he filed the instant suit, which contains both an ADA count and a count alleging violation of the Family Medical Leave Act ("FMLA"). The parties have completed discovery, and LFW now moves for summary judgment of both counts of the complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere

allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transp. Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With these principles in mind, we turn to the motion before us.

## DISCUSSION

### A. FMLA Claim

Burnett's FMLA claim has two components. First, he contends that LFW violated the FMLA because it interfered with his right to take up to 12 weeks of unpaid leave for a serious medical condition. 29 U.S.C. §§ 2612(a), 2615. To be entitled to FMLA leave, an employee must, *inter alia*, notify his or her employer of the need for it. Stoops v. One Call Communications, Inc., 141 F.3d 309, 312 (7th Cir. 1998). The statute need not be specifically named or its protections invoked, but the employee must supply the employer with information sufficient to indicate that the FMLA's protections are implicated, such as the presence or possibility of a serious medical

condition. See id.; Aubuchon v. Knauf Fiberglass, 359 F.3d 950, 952 (7th Cir. 2004). Although the timing of notice depends on the situation involved, some notification must occur unless the employee demonstrates that he or she was unable to provide it. Byrne v. Avon Products, Inc., 328 F.3d 379, 382 (7th Cir. 2003).

It is not disputed in this case that Burnett had prostate cancer at the time of the events in question; nor is it disputed that he never explicitly told LFW that he had to take time off because he had prostate cancer or that he was being tested for it. The parties focus their attentions primarily on the issue of whether what Burnett did tell LFW provided sufficient information to put them on notice that he had a serious medical condition.

As stated earlier, Burnett's communications to his employer comprised statements over a 4-month period that he had a weak bladder, that he was seeing a doctor, that he was undergoing some testing, that he had a high PSA and cholesterol level, and that he was "sick." Cases considering these kinds of vague indications have concluded that they are insufficient to alert the employer to the potential application of the FMLA. See, e.g., Aubuchon, 359 F.3d at 952-53; Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001). In addition, the leave that Burnett requested was not sick leave but vacation leave, and it was to occur in the future, not at the time that Burnett informed Polo that he was sick. Such a request would not lead Polo to infer

that Burnett needed time off to attend to medical needs, so it does not add substance to Burnett's claim that he let Polo know that the FMLA could be implicated. Even when viewed in a light most favorable to Burnett, the undisputed facts in this case demonstrate that, in the months leading up to his termination, Burnett had developed a habit of taking time off not just for doctor's appointments (often not informing LFW of the appointments until after the fact), but for several days around the appointments with no explanation.

Burnett also contends that he had not had any significant disciplinary or performance issues at work until October 2003; according to him, his behavior in disregarding Polo's directions on January 29 were significant changes that should have alerted LFW that something was wrong. He relies heavily upon Byrne to shore up his "changed behavior" argument, but he takes its holding too far. In Byrne, the plaintiff's changed behavior and inability to give sufficient notice stemmed directly from the medical condition that gave rise to the entitlement to FMLA leave. 382 F.3d at 381. Illustrative examples that the court gave in explaining its reasoning were of a similar nature, such as an employee unable to give notice to an employer because of unconsciousness brought on by heart attack or insulin deficiency. Id. The court also acknowledged situations such as a broken arm, where an employer would know without any communication from the employee that leave was needed. Id. at 382.

There is no question that, in circumstances such as that, notice is not feasible or necessary and is correspondingly not required.

However, Burnett's condition had no effect on his capacity to provide his employer with sufficient information to trigger the employer's obligations under the FMLA. Nor was it readily apparent, as would be a broken arm. Moreover, it is undisputed that Burnett had the information about his condition available to him on January 29, but rather than offering it, he refused to meet with his supervisor when summoned, said only that he was "sick" when Polo tracked him down, turned his back, left work, did not return that day or the next, and made no further attempts at communication. Even if this had been an isolated incident in Burnett's employment history, it would still constitute insubordination sufficient to justify LFW's actions. As the Seventh Circuit has stated, "insubordination toward supervisors and coworkers, even when engaged in a protected activity, is justification for termination." Kahn v. U.S. Secretary of Labor, 64 F.3d 271, 279 (7th Cir. 1995).

Although employees need not specifically invoke the FMLA to be entitled to its protection, neither does the statute permit them to leave an employer hanging in the way that Burnett did here, whether or not the employee contemporaneously had a qualifying serious medical condition. See Aubuchon, 359 F.3d at 953; Collins, 272 F.3d at 1008. Thus, we conclude that the content of Burnett's communications with

LFW before he was fired were insufficient to communicate that he may need FMLA leave, so LFW did not interfere with his rights under the statute by firing him. The impact of the lack of notice also erases Burnett's chances of prevailing on his claim of retaliation, which depends in the first instance on his properly exercising his entitlement to FMLA leave. Because he did not, LFW's actions could not have been taken in retaliation.

**B. ADA Claim**

Burnett's second cause of action centers on the claim presented to the EEOC that LFW violated the ADA by terminating his employment either because his cancer disabled him or because LFW regarded him as disabled by his cancer. For the same reasons that the information he had provided by the end of January 2004 does not give enough of a basis to underpin an FMLA claim, it will not provide a foundation for an ADA claim. Based on the limited amount of information Burnett had divulged, LFW could neither know that Burnett had cancer when he was fired, nor regard him as having cancer. As a result, LFW is entitled to summary judgment of the ADA claim as well.

## CONCLUSION

Based on the foregoing analysis, LFW's motion for summary judgment is granted.

/s/ Charles P. Kocoras
_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   December 7, 2005